839 So.2d 715 (2003)
Larry GORDON, Petitioner,
v.
Jerry REGIER, Secretary, Department of Children and Family Services, Respondent.
No. 2D02-3733.
District Court of Appeal of Florida, Second District.
January 15, 2003.
Rehearing Denied March 25, 2003.
*716 Bob Dillinger, Public Defender, and Joy K. Goodyear, Assistant Public Defender, Clearwater, for Petitioner.
Charlie Crist, Attorney General, Tallahassee, and Deena Degenova, Assistant Attorney General, Tampa, for Respondent.
CASANUEVA, Judge.
Larry Gordon petitions this court for a writ of prohibition directing the trial court to enter an order dismissing the State's petition for involuntary civil commitment in which the State alleges that Mr. Gordon is a sexually violent predator. Because Mr. Gordon was not in custody at the time that he was seized pursuant to a seventy-two-hour hold authorized by section 394.9135, Florida Statutes (2000), but instead had been released from the custody of the Department of Corrections (DOC) and was in the civilian population, we hold that the Jimmy Ryce Involuntary Civil Commitment of Sexually Violent Predators' Treatment and Care Act (the Act), sections 394.910-.931, Florida Statutes (2000), is not applicable to him at this time[1] and the state attorney and the trial court do not have jurisdiction to proceed with the civil commitment. We therefore grant the petition, issue the writ, and direct the trial court to dismiss the sexually violent predator petition.
The facts of the case are undisputed. In January 1992, Mr. Gordon was convicted of a lewd and lascivious act in the presence *717 of a child under the age of sixteen and was sentenced to fifteen years in prison. In 1998, when the DOC released him from prison on conditional release supervision, they put him on a Greyhound bus to return to his home. Mr. Gordon violated his supervision and was returned to the custody of the DOC. On April 6, 2000, the Florida Parole Commission reinstated Mr. Gordon's conditional release, and Mr. Gordon was released from the DOC's custody on April 6, 2000, at some time prior to 3 p.m. On Friday, April 7, 2000, the DOC's administrator for the Act reviewed Mr. Gordon's file and determined that Mr. Gordon could possibly be subject to the Act. The administrator contacted the Department of Children and Family Services (DCF) and advised that Mr. Gordon had been released. The DCF then sent a seventy-two-hour hold letter, and pursuant to the letter, the DOC issued a warrant for Mr. Gordon's arrest. On April 8, 2000, two days after Mr. Gordon's release from custody, he was arrested on the warrant and held in the county jail. On that day, Mr. Gordon was transported from the county jail to Martin Treatment Center for diagnosis. On April 10, 2000, the multidisciplinary team, pursuant to section 394.9135, recommended to the State that it proceed with civil commitment under the Act. An order determining probable cause was entered on April 12, 2000.
In September 2000, Mr. Gordon filed a motion to dismiss the State's petition for involuntary civil commitment because Mr. Gordon was not in custody for purposes of the Act at the time the petition for involuntary commitment was filed. In October 2000, the trial court denied Mr. Gordon's motion to dismiss. Mr. Gordon subsequently filed another motion to dismiss the petition for involuntary commitment on the same grounds alleged above. The trial court denied the motion to dismiss, finding that its previously rendered order was the law of the case. Mr. Gordon then filed the present petition for writ of prohibition, seeking to have the involuntary commitment proceedings dismissed.[2]
The Act, by its terms, applies to persons who committed the predicate sexually violent offense prior to the effective date of the Act. Section 394.925 is entitled "Applicability of act" and states: "This part applies to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 394.912(9), as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future."[3] Thus, section 394.925 contemplates that, in order for the Act to apply, the person must be in custody or in "total confinement."
"Total confinement" means that the person is currently being held in any physically secure facility being operated or contractually operated for the Department of Corrections, the Department of Juvenile Justice, or the Department of Children and Family Services. A person shall also be deemed to be in total confinement ... if the person is serving an incarcerative sentence under the custody of the Department of Corrections or the Department of Juvenile Justice *718 and is being held in any other secure facility for any reason.
§ 394.912(11).

I
In reviewing the statutory construction of the Act, we apply the de novo standard. See State v. Glatzmayer, 789 So.2d 297, 301-02 n. 7 (Fla.2001). We point out that there is no statutory definition of "custody." In the legal arena, the term "custody" is a term of art referring to the government's seizure of a person as well as the person's continued detention in a local jail or state or federal prison. We note:
The general rule is that where the legislature has not defined words or phrases used in a statute, they must be "construed in accordance with [their] common and ordinary meaning." Donato v. American Tel. & Tel. Co., 767 So.2d 1146 (Fla.2000). "[T]he plain and ordinary meaning of [a] word can be ascertained by reference to a dictionary." Green v. State, 604 So.2d 471 (Fla.1992).
Southwest Fla. Water Mgmt. Dist. v. Charlotte County, 774 So.2d 903, 915 (Fla. 2d DCA 2001).
The case of State v. Siddal, 772 So.2d 555 (Fla. 3d DCA 2000), held that a person on probation was not in "custody" for the purposes of the Act. Siddal cited to the American Heritage Dictionary of the English Language 357 (2d college ed.1982), which defines custody as: "1. The act or right of guarding, esp. such a right granted by a court. 2. The state of being detained or held under guard, esp. by the police." Furthermore, our supreme court has recently stated:
[B]ased on our review of the Ryce Act and the available evidence of legislative intent discussed above, we conclude that the Legislature intended that ordinarily the review process of potential sexual predators would be concluded while the person was still in prison. The initial ex parte probable cause determination described in section 394.915(1) applies primarily to respondents who are still in prison, and a finding of probable cause under this provision simply requires that a respondent be transferred immediately to a secure facility upon the expiration of the sentence.
State v. Goode, 830 So.2d 817, 825 (Fla. 2002) (footnote omitted). Finally, we also noted in Southwest Florida Water Management, that a "statutory phrase should also be viewed not only in its internal context within the section, but in harmony with interlocking statutes." 774 So.2d at 916 (quoting WFTV, Inc. v. Wilken, 675 So.2d 674, 679 (Fla. 4th DCA 1996)). Accordingly, in regard to the Act, we determine that the word "custody" is synonymous with "total confinement" and means that the person in question is being held at a secure facility.[4]

II
The Act contemplates that the agency with custody over an adult convicted of a sexually violent offense shall, within 365 days of the anticipated release, give written notice of the release to the state attorney and to a multidisciplinary team appointed by the DCF. § 394.913(1). In the case of a person who is returned to total confinement for no more than ninety days, "written notice must be given as soon as practicable following the person's return to confinement." § 394.913(1)(a). Within ninety days after the written notice is received, the DCF is to provide to the state attorney a written recommendation as to *719 whether the person meets the definition of a sexually violent predator. § 394.913(3)(e). The report is to include the written assessment of the multidisciplinary team.
Following receipt of the written assessment and recommendation, the state attorney may file a petition with the circuit court alleging that the person is a sexually violent predator. § 394.914. Prior to the expiration of the incarcerative sentence, the circuit court is to determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator. If the circuit court determines the existence of probable cause, it is to order that the person remain in custody and be transferred to an appropriate secure facility upon expiration of the incarcerative sentence. § 394.915(1). Thus, the Act contemplates that the circuit court make a determination prior to the expiration of the incarcerative sentence as to whether probable cause exists to hold the person as a sexually violent predator. This is consistent with our legal historical precedents requiring a probable cause determination prior to a person's seizure.
However, the Act contains a safety valve for a situation where "the anticipated release from total confinement of a person who has been convicted of a sexually violent offense becomes immediate." § 394.9135(1). In such a situation, the agency with jurisdiction[5] "shall upon immediate release from total confinement transfer that person to the custody of the Department of Children and Family Services to be held in an appropriate secure facility." Id. At this point, the person is being held without probable cause, and the time period for filing the petition is significantly shortened. The constitutionality of this type of seizure has yet to be resolved and is not presently before us.
In the present case, Mr. Gordon was not transferred to the custody of the DCF upon his immediate release from total confinement as required by section 394.9135(1), but was instead released into civilian society by way of a Greyhound bus. Mr. Gordon was released on conditional release, which is a program that "requires that certain inmates will complete their sentences outside of prison, but still under a degree of supervision." Mayes v. Moore, 827 So.2d 967, 971 (Fla.2002). Thus, Mr. Gordon may have been under the supervision of the DOC, but he was not being held in total confinement by the DOC at the time he was taken into custody pursuant to the DCF's warrant.
There is no provision in the Act for commencing proceedings against a person under the Act where he or she is not in custody and is, in fact, living in society. Rather, the Act contemplates that pursuant to section 394.9135(1), when the release from total confinement becomes immediate, the person will be, at that time, transferred to the custody of the DCF to be held in a secure facility. Clearly, that person would be securely guarded during the transfer to the secure facility. Under section 394.9135(1), a person against whom involuntary civil commitment proceedings are appropriately commenced will always be in custody immediately prior to the commencement of the proceedings. Accordingly, we hold that section 394.925, which states that the Act applies to all persons "currently in custody" or "sentenced to total confinement in the future," in conjunction with the other provisions in the Act, provides that involuntary civil commitment proceedings may be brought only against those persons in custody at the moment the proceedings are commenced; there is no provision in the Act *720 for proceeding against those persons who are on supervision but no longer in custody. See Siddal, 772 So.2d 555.
Mr. Gordon argued in his motion to dismiss the petition for involuntary commitment in the trial court that he was not in custody for purposes of the Act at the time the petition was filed, even though he was in the custody of the DCF at the time of the filing of the petition for involuntary commitment. However, neither the state attorney nor the DCF had jurisdiction to proceed against him because the Act is not applicable to a person who has been released into society but thereafter has been recaptured.
The State argues that it may proceed against Mr. Gordon under the Act even though he was not in custody at the time proceedings commenced. In support of this argument, the State cites to subsection 394.9135(4), which states:
The provisions of this section are not jurisdictional, and failure to comply with the time limitations, which results in the release of a person who has been convicted of a sexually violent offense, is not dispositive of the case, and does not prevent the state attorney from proceeding against a person otherwise subject to the provisions of this part.
Subsection (3) of section 394.9135 states that, in the "safety valve" situation, if a petition is not filed within forty-eight hours after the written assessment, the person shall be immediately released. Subsection (4) clarifies that in such a situation, the failure to comply with the time periods is not fatal to the proceedings. We do not interpret subsection (4) to mean that the state attorney or the DCF may start proceedings against a person who is not in custody, since, as stated, that person would not be subject to the provisions of the Act. As in Goode, 830 So.2d 817, we conclude that the legislature intended that the time period is critical to the validity of the statutory scheme.
Based on the foregoing, we grant the petition, issue the writ of prohibition, and direct the trial court to dismiss the sexually violent predator petition and to order that Mr. Gordon be released from the custody of the DCF.
WHATLEY and NORTHCUTT, JJ., Concur.
NOTES
[1] The Act could be applicable to Mr. Gordon in the future should he ever be sentenced to total confinement. See § 394.925.
[2] There is no requirement in the Florida Rules of Appellate Procedure that a petition for writ of prohibition be filed within a certain time period of the order to be reviewed. We may therefore review both the trial court's first order and its second order denying Mr. Gordon's motion to dismiss the petition for involuntary civil commitment.
[3] The effective date of the Involuntary Civil Commitment of Sexually Violent Predators Act was January 1, 1999. Atkinson v. State, 791 So.2d 537 (Fla. 2d DCA 2001), aff'd, 831 So.2d 172 (Fla.2002).
[4] In State v. Atkinson, 831 So.2d 172 (Fla. 2002), our supreme court held that the custody requirement imposed by section 394.925, Florida Statutes (2001), must be read to require that the custody was lawful. Mr. Gordon's untimely seizure was, in fact, unlawful.
[5] The "agency with jurisdiction" is either the Department of Corrections, the Department of Juvenile Justice, or the Department of Children and Family Services. See § 394.912(1).