891 So.2d 517 (2004)
William HALE, Petitioner,
v.
STATE of Florida, Respondent.
No. SC03-166.
Supreme Court of Florida.
December 23, 2004
*518 James Marion Moorman, Public Defender and Deborah K. Brueckheimer, Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Richard Polin, Bureau Chief, Criminal Appeals, Miami, FL, for Respondent.
CANTERO, J.
In this case, which we have considered together with State v. White, No. SC02-2277, 891 So.2d 502, 2004 WL 2973858 (Fla. Dec. 23, 2004), we decide whether the State presented sufficient evidence that the petitioner, William Hale, is a sexually violent predator under the Jimmy Ryce Act, sections 394.910-.931, Florida Statutes (1999), and whether the Act requires that the person whom the State seeks to commit be currently incarcerated for a sexually violent offense. As we explain below, we conclude that substantial competent evidence supports the jury's determination that Hale is a sexually violent predator, and that the Act does not require that Hale's current incarceration be for a sexually violent offense.
The Ryce Act provides for the involuntary civil commitment of persons found to be sexually violent predators. Before the State may impose civil commitment under the Ryce Act, a factfinder must determine by clear and convincing evidence that the respondent (1) has been convicted of an enumerated sexually violent offense; and (2) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment. See § 394.912(10), Fla. Stat. (1999).
Hale was civilly committed under the Ryce Act as a sexually violent predator. On appeal, he argued that the United States Supreme Courts decision in Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), imposed an additional, extra statutory but constitutionally required element necessary to commit a respondent under the Ryce Act, about which the jury must be instructed: namely, that the respondent has serious difficulty controlling behavior. See Hale v. State, 834 So.2d 254 (Fla. 2d DCA 2002). The Second District Court of Appeal disagreed and affirmed the commitment. In a conflicting case, however, the First District Court of Appeal held that Crane did impose an additional element. See White v. State, 826 So.2d 1043, 1044 (Fla. 1st DCA 2002), quashed, No. SC02-2277, 891 So.2d 502, 2004 WL 2973858 (Fla. Dec. 23, 2004). Both Hale in this case and the State in White sought review in our Court. We accepted jurisdiction in both cases to resolve the conflict. See art. V, § 3(b)(3), Fla. Const. In White, we now have held that Crane does not impose a fourth element of proof in a civil commitment proceeding under the Ryce Act and therefore the jury need not be instructed that the respondent must have serious difficulty controlling behavior. For the reasons stated in White, we approve the Second Districts decision in this case.
We now address (I) whether the State presented sufficient evidence that Hale is a sexually violent predator, and (II) whether the Act requires that the person to be committed be currently incarcerated for a sexually violent offense.[1]

I. Sufficiency of the Evidence
Hale first claims that the evidence was insufficient to prove he is a sexually *519 violent predator. After a thorough review of the record, we find the evidence sufficient to support the jury's verdict. At Hale's civil commitment proceeding, the State presented seven witnesses, including two psychologists, three of Hale's past victims, and two investigating law enforcement officers. Through these witnesses, the jury heard about several prior sexually related offenses: a 1973 conviction for assault with intent to commit rape; a 1973 incident where Hale attempted to grab a sixteen-year-old girl; a 1982 loitering and prowling incident; a 1982 sexual battery conviction; a 1984 charge of attempted sexual battery and kidnapping (to which Hale later pled guilty to battery); a 1987 conviction for attempted sexual battery; and a 1991 loitering and prowling incident.
The victims in some of these cases testified at Hale's commitment hearing and offered details of those incidents. Specifically, the victim of the 1973 assault testified that Hale approached her outside her home and forced her and her infant son into the house at knifepoint. Hale then forced the victim to perform oral sex while her son stood by screaming. Hale told the victim that he had been watching her, and that if she called anyone, he would return. Less than two weeks later, Hale entered a room at a local high school where he grabbed a sixteen-year old from behind, placing his arms around her shoulders and putting his hand over her mouth. Hale told her not to scream. The young woman fought Hale off and fled the room. The victim in the 1987 attempted-sexual-battery charge explained that she encountered Hale when she had a flat tire on her car and he offered to help. After the two drove to a gas station to put air in the tire, however, instead of dropping off the victim at her car Hale turned onto a dirt road, where he told her he wanted to see her breasts. Hale began pulling at the woman's shirt and grabbing at her. The victim jumped out of the vehicle when it stopped, but Hale caught her and the two struggled. He threw the victim to the ground and choked her, saying that no one would hear her screaming and that he was going to take her into the woods and no one would find her. The victim was able to strike Hale in the face and escape.
Mental health experts also testified at the hearing about incidents in Hale's past. One described a situation where Hale gave a woman a ride in his truck. When she discovered that the door was broken, Hale reached across her and touched her breasts. Another testified about an incident in 1982 where Hale had been walking down a highway, approached a woman walking, and put his hand on her shoulder. She screamed and he put his hand on her mouth. Hale indicated that he touched the woman's breasts and that they struggled and fell. Finally, in 1984 Hale came upon a woman with a flat tire on her bicycle. He stopped, put the bicycle in the trunk of his car, and commented that the woman was "good looking." Hale then reached over as if he were going to open the car door for her, and rubbed against her breasts.
The mental health experts also testified about Hale's psychological condition. One expert diagnosed Hale with a personality disorder with antisocial features, while the other opined that Hale suffers from personality disorder NOS (not otherwise specified). Both experts testified that Hale was at "high" risk of reoffending, and even Hale's own expert agreed he was a "moderate" risk. Thus, the State presented sufficient evidence for the jury to find that Hale is a sexually violent predator subject to civil commitment under the Ryce Act.
The dissent argues that the standard jury instructions given in this case are constitutionally infirm because they fail "to *520 instruct the jury either that civil commitment necessitates a determination that the respondent has serious difficulty controlling his or her behavior, or `likely to engage in acts of sexual violence in the future' means more probable than not." Dissenting op. at 523. In White, we explained why Crane does not require an additional instruction on the respondent's serious difficulty in controlling behavior. As to the dissenting opinion's argument that we are constitutionally required to define "likely" as "more likely than not," we do not agree. The concept of a "likelihood" of reoffending by committing another sexually violent offense is not so easily quantifiable. Mental health experts cannot be expected to handicap probabilities with mathematical precision. In White, we discussed the United States Supreme Court's hesitancy to prescribe bright-line rules in the area of mental illness:
The Supreme Court also noted that "Hendricks as so read provides a less precise constitutional standard than would those more definite rules for which the parties have argued." Crane, 534 U.S. at 413, 122 S.Ct. 867. However, the Court felt that "the Constitution's safeguards of human liberty in the area of mental illness and the law are not always best enforced through precise bright-line rules." Id. First, "the States retain considerable leeway in defining the mental abnormalities and personality disorders that make an individual eligible for commitment," and second, "the science of psychiatry, which informs but does not control ultimate legal determinations, is an ever-advancing science, whose distinctions do not seek precisely to mirror those of the law." Id. Therefore, the Supreme Court "sought to provide constitutional guidance in this area by proceeding deliberately and contextually, elaborating generally stated constitutional standards and objectives as specific circumstances require." Id. at 414, 122 S.Ct. 867.
White, slip op. at 506.
As the Supreme Court recognized, law and psychology do not fit neatly together. The jury instructions we approved in White tracked the statutory language: "`Likely to engage in acts of sexual violence' means a person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of other." White, op. at 503; see § 394.912(4), (10), Fla. Stat. (1999). This language sufficiently guides the jury and, as we held in White, it satisfies the constitutional requirements explained in Crane.

II. The meaning of "Custody" for Purposes of the Ryce Act
Hale next argues, citing section 394.925, Florida Statutes (1999), that the Ryce Act does not apply to him because when the civil commitment petition was filed he was not in custody for a sexually violent offense. We first clarify that this case is controlled by the original version of the Act contained in sections 916.31-.49, Florida Statutes (Supp.1998), not the 1999 version. The amended version, sections 394.910-.931, Florida Statutes (1999), did not become effective until May 26, 1999. See ch. 99-222 §§ 3-24, at 1374-87, Laws of Fla. The State filed the civil commitment petition against Hale on April 5, 1999. Therefore, the original version of the Act, effective January 1 through May 25, 1999, applies.
Section 916.45, Florida Statutes (Supp.1998), provides: "Applicability of act.  Sections 916.31-916.49 apply to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 916.32(8), as well as to all persons convicted of a sexually violent offense in the future." Sexually violent *521 offense is defined in section 916.32(8) as follows:
(8) "Sexually violent offense" means:
(a) Murder of a human being while engaged in sexual battery in violation of s. 782.04(1)(a)2.;
(b) Kidnapping of a child under the age of 16 and, in the course of that offense, committing:
1. Sexual battery; or
2. A lewd, lascivious, or indecent assault or act upon or in the presence of the child;
(c) Committing the offense of false imprisonment upon a child under the age of 16 and, in the course of that offense, committing:
1. Sexual battery; or
2. A lewd, lascivious, or indecent assault or act upon or in the presence of the child;
(d) Sexual battery in violation of s. 794.011;
(e) Lewd, lascivious, or indecent assault or act upon or in presence of the child in violation of s. 794.011;
(f) An attempt, criminal solicitation, or conspiracy, in violation of s. 777.04, of a sexually violent offense;
(g) Any conviction for a felony offense in effect at any time before October 1, 1998, which is comparable to a sexually violent offense under paragraphs (a)-(f) or any federal conviction or conviction in another state for a felony offense that in this state would be a sexually violent offense; or
(h) Any criminal act that, either at the time of sentencing for the offense or subsequently during civil commitment proceedings under ss. 916.31-916.49, has been determined beyond a reasonable doubt to have been sexually motivated.
Hale apparently concedes that at some point he was convicted of one of the offenses enumerated above. He argues only that at the time the petition was filed, he was in custody on a nonenumerated offense  dealing in stolen property.
In considering Hale's argument, we first look at the statutory language itself. As we have repeatedly stated, the intent of the legislature must guide our analysis, and that intent must be determined primarily from the language of the statute. See Miele v. Prudential-Bache Sec., Inc., 656 So.2d 470, 471 (Fla.1995). The Act applies "to all persons currently in custody who have been convicted of a sexually violent offense. . . as well as to all persons convicted of a sexually violent offense in the future." Thus, the person in custody must have been convicted of a sexually violent offense. The statute says nothing about whether the person must be currently incarcerated for that same offense. The statute does not state that it applies to all persons currently in custody for a sexually violent offense and it does not otherwise link the current incarceration to the sexually violent offense.
Other sections of the Act, when read together with section 916.45, lead to the conclusion that the legislature did not intend that the Act apply only to persons currently incarcerated for sexually violent offenses. A "sexually violent offense" is defined to include a federal conviction or a conviction from another state. See § 916.32(8)(g), Fla. Stat. (Supp.1998). As the Fourth District Court of Appeal recently reasoned:
A person in custody in Florida, whose only conviction for a sexually violent offense is from another jurisdiction, would not be in custody for a sexually violent offense. The non-Florida sentence for the sexually violent offense could be running concurrently, could have been completed, or could be consecutive to the *522 Florida sentence. Under none of those scenarios would the current incarceration be as a result of the sexually violent offense.
Tabor v. State, 864 So.2d 1171, 1174 (Fla. 4th DCA 2004).
Therefore, reading sections 916.45 and 916.32(8)(g) together, we conclude that the Act applies to all persons who are currently incarcerated and who at some point in the past have been convicted of a sexually violent offense. Such a reading of the Act "give[s] effect to all statutory provisions and construe[s] related statutory provisions in harmony with one another." See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992). We find that the Ryce Act does not require that the respondents current incarceration be for a sexually violent offense.

III. CONCLUSION
For the reasons stated in State v. White, No. SC02-2277, 891 So.2d 502, 2004 WL 2973858 (Fla. Dec. 23, 2004), we approve the Second District's decision and hold that the United States Supreme Court's decision in Crane does not impose a fourth element of proof in a civil commitment proceeding under the Ryce Act. Therefore, the jury need not be instructed that the respondent must have serious difficulty controlling behavior. We also find that the evidence in this case was sufficient to commit Hale as a sexually violent predator. Finally, we hold that the respondent need not be in custody for a sexually violent crime at the time the civil commitment petition is filed.
It is so ordered.
WELLS, LEWIS, and BELL, JJ., concur.
PARIENTE, C.J., dissents with an opinion, in which ANSTEAD, J., concurs.
QUINCE, J., dissents.
PARIENTE, C.J., dissenting.
The Jimmy Ryce Act, which had its impetus in a horrific crime of sexual violence against a young child, ostensibly targets for involuntary civil commitment "a small but extremely dangerous number of sexually violent predators." § 394.910, Fla. Stat. (2004). Some, concerned that the Act empowers the State to take the drastic step of civilly confining an individual who has served his or her sentence, took comfort in the belief that by civilly committing a small but extremely dangerous number of sexually violent predators, the State was acting to prevent future sexual crimes of violence against vulnerable children by sexual predators, specifically pedophiles.
In Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the seminal case in which the United States Supreme Court upheld a civil commitment scheme that subsequently served as a model for the Ryce Act, commitment proceedings were instituted against an offender who was approaching the completion of a sentence for taking "indecent liberties" with two thirteen-year-old boys. See id. at 353-54, 117 S.Ct. 2072. The defendant had a long history of sexually molesting children, and agreed that he suffered from pedophilia and was not cured of the condition. See id. at 350, 355, 117 S.Ct. 2072.
The facts of this case stand in stark contrast to Hendricks. The petition for civil commitment was filed in April 1999 against Hale, who was forty-eight at the time, on the day he was to be released from prison for dealing in stolen property. The prior offenses on which the petition was based, attempted sexual battery and false imprisonment, occurred in 1987. Two previous sexual offenses had occurred *523 fourteen years earlier, in 1973. As this case illustrates, the net cast by the Ryce Act encompasses an individual whose crime of sexual violence is far in the past, whose prior record shows no evidence that he is a danger to young children, and whose most recent incarceration subjecting him to civil commitment was for an offense unrelated to sexual violence.
Recognizing that sexual offender commitment schemes have the potential to violate due process by sweeping too broadly, the United States Supreme Court has emphasized
the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment "from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." That distinction is necessary lest "civil commitment" become a "mechanism for retribution or general deterrence"  functions properly those of criminal law, not civil commitment.
Kansas v. Crane, 534 U.S. 407, 412, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002) (quoting Hendricks, 521 U.S. at 360, 117 S.Ct. 2072, (1997)).
Clear, concise jury instructions are an indispensable tool in helping juries draw this difficult distinction. The standard instruction given in this case suffers the same constitutional defects as in State v. White, No. SC02-2277, 891 So.2d 502, 2004 WL 2973858 (Fla. Dec. 23, 2004): failure to instruct the jury that civil commitment necessitates a determination that the respondent has serious difficulty controlling his or her behavior, and that "likely to engage in acts of sexual violence" in the future means more probable than not. See White, op. at 515 (Pariente, C.J., dissenting); see also Westerheide v. State, 831 So.2d 93, 117 (Fla.2002) (Pariente, J., concurring in part and dissenting in part).
The present case illustrates the importance of a specific jury instruction that "likely" means, at the very least, "more probable to occur than not to occur." Although the majority highlights evidence that could support a jury finding, the expert testimony on this question was both equivocal and conflicting. During the trial, the State's expert, Dr. Jeffrey Benoit, testified on direct examination that Hale had a "high risk for [committing] another sexually related offense" in the future. However, contrary to this testimony, Dr. Benoit admitted on cross-examination that after reviewing his records and the results from the various tests he performed on Hale, he agreed that Hale had a "moderate risk" of reoffending with a recidivism rate of 32.7 percent over a five-year period. Dr. Benoit also agreed that the likelihood of reoffending after age forty-eight (Hale's age) was drastically reduced.
The State's second expert, Dr. Gregory Pritchard, testified that Hale's scores on the tests he administered were consistent with Dr. Benoit's test results. In Dr. Pritchard's professional opinion, Hale's 48.6 percent likelihood of reoffending over a ten-year period constituted a "high" likelihood.
In defense, Hale presented the testimony of Dr. Roy Lusk, who testified that the passage of twelve years since Hale's last sexually violent offense and his age made him less likely to reoffend. Dr. Lusk obtained the same results as Dr. Benoit and Dr. Pritchard, leading him to conclude that Hale had a "moderate" risk of reoffending. Thus, although identical results were obtained, two experts testified that the results demonstrated that Hale had a moderate likelihood of reoffending, while one expert testified that the results showed that Hale had a high likelihood of reoffending. *524 Had the trial court given an instruction that "likely" means "more probable to occur than not to occur," the jury, applying the percentage figures in the expert testimony, almost certainly would have concluded that Hale did not meet the criteria for civil commitment as a sexually violent predator.
Further, had the trial court given an instruction that for Hale to be civilly committed, there must be a finding that he has substantial difficulty controlling his behavior, jurors would probably have concluded that this threshold was not met. As I stated in my dissenting opinion in White, implicit in both the standard instructions and the statute is the Crane requirement that an offender must have serious difficulty in controlling his behavior. See White, op. at 515. We should make this critical requirement clear and explicit.
In the absence of instructions providing the jury adequate guidance on how to determine Hale's likelihood of reoffending and requiring a determination that Hale has serious difficulty controlling his behavior, the verdict in this case lacks the reliability that we must insist upon for involuntary civil commitment of individuals who have completed their prison sentences. As I have previously stated,
[t]he dangers of failing to narrow the class of individuals who are subject to civil commitment by clearly setting forth the dual requirements of serious difficulty in controlling behavior and high likelihood of reoffending are grave. At the very least, we must and should require clear, precise, and adequate jury instructions to guide the jury in this largely uncharted path of civil commitment before these individuals are labeled as sexually violent predators. . . .
Westerheide, 831 So.2d at 120-21 (Pariente, J., concurring in part and dissenting in part).
The use of percentages such as 32.7 percent or 48.6 percent raises a separate concern about the reliability of this type of psychological testing. As Judge Sharp of the Fifth District Court of Appeal has cogently observed,
[t]he Legislature made a finding, in passing this statute, that there exists a small but very dangerous group of people called "sexually violent predators." However, there is no evidence this group truly exists and is identifiable.
Even if such a "syndrome" can be established by legislative fiat, there is also great uncertainty about the accuracy of psychiatric diagnosis and the prediction of future behavior. As Justice Brennan explained in his dissenting opinion in Jones v. United States:

. . . Commentators and researchers have long acknowledged that even the best attempts to identify dangerous individuals on the basis of specified facts have been inaccurate roughly two-thirds of the time, almost always on the side of over-prediction. On a clinical basis, mental health professionals can diagnose past or present mental condition with some confidence, but strong institutional biases lead them to err when they attempt to determine an individual's dangerousness, especially when the consequence of a finding of dangerousness is that an obviously mentally ill patient will remain within their control.
Westerheide v. State, 767 So.2d 637, 661 (Fla. 5th DCA 2000) (Sharp, J., concurring specially), approved, 831 So.2d 93 (Fla.2002). I agree that probabilities of reoffending cannot reliably be predicted with "mathematical precision." Majority op. at 520. However, this unavoidable imprecision should be viewed as grounds for skepticism about the percentages given by the experts, rather than used to preclude a *525 definition of likelihood as more probable than not, in accord with the common understanding of the term. See White, op. at 505-06; see also Westerheide, 831 So.2d at 106.
I reiterate some of my concerns in Westerheide that are magnified in this case:
The very phrase "sexually violent predator" is enough to instill fear in our hearts. An understandable reaction when faced with the spectre of a "sexually violent predator" unrestrained in our neighborhood is to hope that our government will go to any lengths to prevent that person from harming individuals  especially children  in the future.
Let there be no mistake: I deplore the criminal acts that Westerheide committed. However, no matter how reprehensible an individual's past criminal behavior has been, this country has prided itself on placing constitutional restrictions on the government before that individual's liberty may be completely restrained. Thus, as Chief Justice Zlaket observed:
I cannot help but wonder where this novel approach to crime, punishment and public safety will lead us. How can we be sure, as the attorney general has argued, that the legislature will continue to view only sexual offenders as a special and unique class of criminals? If prosecutors are able to find mental health professionals willing to testify that people who commit repetitive assaults of a non-sexual nature have a mental abnormality predisposing them to such violent behavior, will the legislature pass laws to keep them incarcerated beyond their criminal sentences by the device of civil commitment? How about perpetrators of multiple domestic violence? Chronic drunk drivers? Violent drug offenders? What are the limits of this "end run" around the normal criminal justice process?

In re Leon G., 200 Ariz. 298, 26 P.3d [481,] 491 [(Ariz.2001)]. For the sake of our democracy and the freedom that has been the hallmark of our society, let us hope that is not where we are headed.
Westerheide, 831 So.2d at 120 (Pariente, J., concurring in part and dissenting in part).
Under the facts of this case, the absence of clear, precise, and adequate jury instructions for civil commitment has yielded what I fear is a grave injustice to an individual who has fully served his sentence for his criminal acts and who, at the age of forty-eight and more than a decade past his last prior sexual offense, does not appear to be one of the "small but extremely dangerous number of sexually violent predators" that the Ryce Act was designed to reach.
ANSTEAD, J., concurs.
NOTES
[1] We decline to address Hale's remaining claims. See Kelly v. Community Hosp. of Palm Beaches, 818 So.2d 469, 470 n. 1 (Fla.2002) (declining to address issues that were beyond the scope of this Courts conflict jurisdiction).