909 So.2d 500 (2005)
Daniel Louis MOORE, Petitioner,
v.
STATE of Florida, Respondent.
No. 5D05-441.
District Court of Appeal of Florida, Fifth District.
August 26, 2005.
*501 James S. Purdy, Public Defender, and John M. Selden, Assistant Public Defender, Daytona Beach, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, for Respondent.
PALMER, J.
In this proceeding instituted under Florida's Jimmy Ryce Act[1], petitioner Daniel Moore has filed a petition seeking certiorari review of the trial court's order denying his motions to vacate warrant, to rescind order determining probable cause, and to rescind order denying his petition for writ of habeas corpus. Finding no departure from clearly established principles of law, we deny the petition.
In 1987 and 1993 Moore was convicted of several counts of gross sexual imposition in the state of Ohio. (Moore acknowledges that these convictions would constitute qualifying offenses under the Jimmy Ryce Act). He was sentenced on these offenses, served his time, and was released.
In 2002, Moore was convicted and sentenced to a term of five years' imprisonment in Florida after entering a no contest plea to the charge of failing to register as a sex offender. Two years later, Moore moved to withdraw his plea, and the motion was granted. His judgment and sentence for failing to register as a sex offender were vacated.
Soon thereafter, the Department of Children and Families (DCF) was notified by the Department of Corrections (DOC) that Moore appeared to be eligible for commitment as a sexually violent predator, as that term is defined by the Jimmy Ryce Act. However, on that same day, DCF informed DOC that since Moore's conviction had been vacated, Moore was no longer eligible for civil commitment under the Jimmy Ryce Act.
One month later, Moore entered a re-negotiated plea of no contest to the charge of failing to register as a sex offender in exchange for a sentence of time-served. On that same day, the Putnam County Jail faxed the clerk's minutes of Moore's plea and sentencing hearing to the Sentence Structure Unit within DOC. Two days later, the Putnam County Jail contacted Release Management, a separate unit within DOC, and requested Moore's release paperwork.
However, Release Management, not yet aware of Moore's re-sentencing, sent the Putnam County Jail a copy of Moore's release paperwork from his earlier vacation of sentence. As a result, Moore was mistakenly released from the Putnam County Jail because DOC indicated it had no further interest in him.
*502 The next day, Release Management received the paperwork on Moore's re-negotiated plea and re-sentencing, and again notified DCF that Moore appeared to qualify as being a sexually violent predator under the Jimmy Ryce Act. DCF responded by requesting that DOC transport Moore to the Florida Civil Commitment Center for evaluation; however, Moore had already been released. A week later, Putnam County sheriff's deputies took Moore into custody in order to institute Jimmy Ryce Act proceedings against him.
Once in custody, Moore was transferred to the Florida Civil Commitment Center. Two state psychologists recommended that Moore be committed under the Jimmy Ryce Act. Shortly thereafter, DCF recommended that the state attorney file a petition for involuntary commitment pursuant to the Jimmy Ryce Act. The state attorney did so. Upon review of said petition, the trial court issued an order determining that probable cause existed to believe that Moore was subject to commitment as well as a warrant for custodial detention against Moore.
Moore challenged his detention in the trial court by filing a motion to vacate the warrant, a motion to rescind the probable cause order, and a motion for habeas corpus relief. However, after conducting a hearing on the motions, the trial court entered an order denying same. Moore seeks certiorari review of the trial court's rulings, raising two claims of error.
First, Moore argues that the Jimmy Ryce Act cannot apply to him because he was released from custody prior to any action taken on the part of the State to institute Jimmy Ryce Act proceedings against him. For support, he relies primarily on the opinion of the Second District in Gordon v. Regier, 839 So.2d 715 (Fla. 2d DCA 2003), rev. denied, 890 So.2d 1115 (Fla.2004). For reasons set forth below, we disagree with that ruling.
In Gordon, the defendant was convicted of committing a lewd and lascivious act in the presence of a child in January 1992. In 1998, DOC released the defendant from prison on conditional release but he violated his supervision and was returned to DOC. Subsequently, the Florida Parole Commission reinstated the defendant's conditional release, and he was released from DOC custody. Though not made clear in the Gordon opinion, it appears that a bureaucratic snafu (somewhat analogous to the one which occurred in the instant case) occurred because the very next day, the DOC administrator for the Jimmy Ryce Act reviewed the defendant's file and determined that he could possibly be subject to civil commitment. The administrator contacted DCF and was advised that the defendant had been released. DCF then issued a 72-hour hold letter, and pursuant to the letter, DOC issued a warrant for the defendant's arrest. The defendant was arrested on the warrant and held in the county jail. On that day, the defendant was transported from the county jail to the Martin Treatment Center for diagnosis. Once there, a multidisciplinary team recommended that the state attorney proceed with civil commitment. An order determining probable cause was subsequently entered. Five months later, the defendant filed a motion to dismiss the State's petition for involuntary civil commitment based on the fact that he was not in custody for purposes of the Jimmy Ryce Act at the time the petition was filed. The trial court denied the motion. The defendant then filed a petition for writ of prohibition in the appellate court seeking to have the involuntary commitment proceedings dismissed.
On these facts, the Second District granted the petition, determining that neither *503 the state attorney nor DCF had jurisdiction to proceed against the defendant because the Jimmy Ryce Act "is not applicable to a person who has been released into society but thereafter has been recaptured." Gordon, 839 So.2d at 720. In so ruling, the Gordon court rejected the State's argument that it was entitled to proceed against the defendant in light of section 394.9135(4), Florida Statutes, which states: "The provisions of this section are not jurisdictional, and failure to comply with the time limitations, which results in the release of a person who has been convicted of a sexually violent offense, is not dispositive of the case, and does not prevent the state attorney from proceeding against a person otherwise subject to the provisions of this part." The court explained: "We do not interpret subsection (4) to mean that the state attorney or the DCF may start proceedings against a person who is not in custody, since, as stated, that person would not be subject to the provisions of the Act." Id.
To date, no other appellate court has interpreted section 394.9135(4) in the same way as Gordon. In fact, appellate judges from two other courts, including this court, interpret the scope of section 394.9135(4) somewhat differently.
In State v. Ducharme, 881 So.2d 70, 73 (Fla. 5th DCA 2004) rev. dismissed, 895 So.2d 405 (Fla.2005)(Ducharme I) (Sawaya, C.J., concurring in part and dissenting in part), Judge Sawaya noted that the "provisions of section 394.9135 are not jurisdictional, and noncompliance by the state does not prevent it from instituting proceedings under the Act." Judge Sawaya also explained the proper application of section 394.9135 as follows:
Section 394.9135 applies when the release from total confinement of the person to be committed becomes "immediate for any reason." § 394.9135(1), Fla. Stat. (2000) (emphasis added). In my view, a typical example of such a release would be the trial court's acceptance of a plea from a defendant and the imposition of a sentence to credit for time served. The procedure established by section 394.9135 requires that in instances such as this, the person will be transferred to the Department of Children and Family Services for evaluation and a determination whether to file a petition. § 394.9135(1), Fla. Stat. (2000). The state will have 72 hours after transfer within which to assess the individual to determine whether he or she meets the criteria for a sexually violent predator. § 394.9135(2), Fla. Stat. (2000). The state will then have 48 hours after receipt of the assessment report to subsequently file the commitment petition. § 394.9135(3), Fla. Stat. (2000). If a petition is filed and the trial judge determines that there is probable cause to believe that the person is a sexually violent predator under the statutory definition, "the judge shall order the person be maintained in custody and held in an appropriate secure facility for further proceedings in accordance with this part." § 394.9135(3), Fla. Stat. (2000).
Id. (Emphasis in original).
Similarly, in Washington v. State, 866 So.2d 725, 727 (Fla. 3d DCA 2004), rev. denied, 895 So.2d 1068 (Fla.2005) (Cope, J., specially concurring), Judge Cope explicitly concluded that the "release of an individual from custody does not prevent the State from instituting proceedings under the Act."
Both Judge Sawaya's and Judge Cope's analyses of section 394.9135, particularly section 394.9135(4), follow the plain statutory language to the effect that the requirements of section 394.9135 are not jurisdictional. To the extent that Gordon's *504 interpretation of section 394.9135(4) differs, we respectfully disagree with Gordon.
Additionally, the ruling in Gordon cannot be reconciled with this court's opinion in State v. Ducharme, 892 So.2d 1133 (Fla. 5th DCA 2004), rev. dismissed, 895 So.2d 405 (Fla.2005) (Ducharme II), and the opinion of the Supreme Court of Florida in Tanguay v. State, 880 So.2d 533 (Fla.2004), upon which, in part, Ducharme II relies.
In Ducharme II, the defendant was transferred to DCF three days after he was sentenced to a term of time served. Ducharme II noted that, while the defendant may have been entitled to receive habeas corpus relief after being sentenced to time served as he was "arguably" not legally detained for a three-day period, that fact "does not divest the circuit court of jurisdiction to adjudicate the commitment petition." Ducharme II held that the timeline for filing a petition for civil commitment under the Jimmy Ryce Act does not begin to run until the date DOC transfers the defendant to the custody of DCF, and that an improper detention is of no consequence for purposes of jurisdiction to proceed under the Jimmy Ryce Act. To support its ruling, Ducharme II cited to Tanguay v. State, 880 So.2d 533 (Fla.2004), which held that the unlawful detention of an inmate for 16 days beyond the expiration of his sentence in order to seek civil commitment pursuant to the Jimmy Ryce Act did not divest the trial court of jurisdiction to adjudicate a Jimmy Ryce Act commitment petition.
Thus, even assuming for the sake of argument that Moore's subsequent detention was improper, under Ducharme II and Tanguay such impropriety appears to be of no consequence because, logically, it makes no difference whether the defendant was improperly detained for a period of time after being sentenced, or whether the defendant was erroneously released and then subsequently detained (whether properly or improperly) after the error was discovered. Under the statute, the agency holding the individual "who has been convicted of a sexually violent offense" has a mandatory duty to transfer that individual to DCF for assessment when that individual's "anticipated release" becomes "immediate for any reason." See § 394.9135(1), Fla. Stat. (2003). In Ducharme II and Tanguay, that duty was fulfilled by improperly detaining an individual, whereas in the instant case that duty was fulfilled by subsequently detaining Moore, who had been erroneously released as a result of a bureaucratic snafu.
Moore also challenges his detention by arguing that the Jimmy Ryce Act does not apply to him since he was not in custody in Florida on the effective date of the Act and did not commit a qualifying offense after that date. However, as indicated above, Moore acknowledged that his prior Ohio convictions constitute qualifying offenses under the Act. As such, under Hale v. State, 891 So.2d 517 (Fla.2004), Moore is not entitled to relief.
In Hale, the defendant argued that at the time the Jimmy Ryce Act petition was filed against him, he was in custody on a nonenumerated offense; namely, dealing in stolen property. However, the Hale court determined that this fact was of no moment in light of the clear statutory language and thus ruled that the Jimmy Ryce Act applies to all persons who are currently incarcerated and who at some point in the past have been convicted of committing a sexually violent offense:
The Act applies "to all persons currently in custody who have been convicted of a sexually violent offense ... as well as to all persons convicted of a sexually offense in the future." Thus, the person in custody must have been convicted of a sexually violent offense. The statute *505 says nothing about whether the person must be currently incarcerated for that same offense. The statute does not state that it applies to all persons currently in custody for a sexually violent offense and it does not otherwise link the current incarceration to the sexually violent offense. Other sections of the Act, when read together with section 916.45, lead to the conclusion that the legislature did not intend that the Act apply only to persons currently incarcerated for sexually violent offenses.
Id. at 521. Under the plain language of the Jimmy Ryce Act and Hale, the Jimmy Ryce Act does indeed apply to Moore.
PETITION DENIED.
THOMPSON and SAWAYA, JJ., concur.
NOTES
[1] The Jimmy Ryce Civil Commitment for Sexually Violent Predators Act, is codified at sections 394.910-.931, Florida Statutes (2002).