913 So.2d 744 (2005)
Walter Lee GOLDEN, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-3804.
District Court of Appeal of Florida, Fifth District.
November 4, 2005.
*745 James S. Purdy, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
Walter Lee Golden (Golden) appeals from a judgment which found him to be a sexually violent predator and provided for his civil commitment as such under the Jimmy Ryce Act, a/k/a the Sexually Violent Predator Act (the Act). He raises six points on appeal. We address only one as having merit: whether the trial court erred in denying his motion to vacate the civil commitment proceeding and discharge him because the proceedings were initiated by an unsworn petition. We affirm based on section 394.915(2), and Kephart v. Regier, 30 Fla L. Weekly S182, ___ So.2d ___, 2005 WL 673681 (Fla. March 24, 2005).
The facts of this case are not in dispute. Golden's initial evaluation by the three member panel Multi-Disciplinary Team (MDT) of the Department of Children & Family Services, concluded that Golden did not meet the criteria for involuntary commitment under the Act. Two months later, the MDT re-evaluated its decision after the state attorney forwarded additional material to it. After this second evaluation, two doctors, Shaw and Brown, continued to doubt that Golden was appropriate for civil commitment, and another personal interview with Golden was conducted.
In August of 2001, the MDT found that Golden did meet the Act's criteria for involuntary commitment. The trial testimony by MDT doctors based on their second interview was sufficient to constitute substantial competent evidence[1] to support MDT's determination that Golden met the criteria for involuntary civil commitment under the Act.
The testimony revealed that Golden had double or triple the number of victims than he originally disclosed. It also showed that Golden's abuse of young boys, prior to the convictions for which he was then incarcerated, occurred over a much longer period of time, and with much younger victims, than he had previously admitted. He admitted he had sexually abused his *746 son, as well. Golden also revealed that he had lied when he said that earlier he had voluntarily sought psychological treatment. Instead, he had gone for psychological treatment because his former work supervisor became aware that he had molested a child and his supervisor sent him into treatment. Moreover, there had been yet another child whom Golden admitted to sexually abusing during this earlier period of time.
Golden admitted that he continued to masturbate to thoughts of young male victims, despite his earlier assertions to the contrary. Dr. Brown testified that one of the most disturbing aspects of the case, with regard to Golden's potential for relapse, was that while incarcerated and undergoing treatment, he had been developing computer fantasy games. He completed nine such modules, which were designed to appeal to young males and cause teenage boys to contact him. Golden said he didn't "think" he would have contact with the boys. Furthermore, upon release he planned to live with his mother and son, both of whom believed he did not need any further psychological treatment.
After the MDT's determination that Golden qualified for civil commitment, the state attorney filed an unsworn petition seeking Golden's involuntary civil commitment on August 30, 2001. The petition was filed about one month before he was scheduled to be released on October 1, 2001 (his "release date"). The day after the petition was filed, on August 31, 2001, the court made an ex parte determination that probable cause existed to detain Golden, based on the state's petition and its attachments.[2] Although Golden was advised of his right to request a section 394.915(2) adversarial probable cause hearing, he did not, at any time, do so.
On November 20, 2001, approximately 50 days after his release date, Golden filed a motion to vacate the probable cause order, seeking his release. The basis for this motion was that his detention was illegal because it was founded on an unsworn petition. The next day, the state filed a motion to amend the petition and submitted an amended petition which attempted to correct the defect in the original petition. The trial court accepted the amended petition on or about November 28, 2001 and issued an order which denied Golden's motion to vacate the probable cause order. It also denied his request for release. Golden was subsequently tried and a unanimous jury found him to be a sexually violent predator.
The Kephart case, which has been cited to by both parties, is factually distinguishable from the present case. Kephart involved an unsworn petition filed on the respondent's release date. The petition was not made under oath because the Act does not require the petition to be sworn.[3] *747 Nor were any affidavits from psychologists or other parties attached to the petition. The state subsequently filed an amended petition, which was identical to the original petition, except for a verification by the state attorney.[4]
Kephart holds that due process[5] requires the petition to be based on sworn proof where a probable cause petition is filed on the respondent's release date, citing generally to State v. Goode, 830 So.2d 817 (Fla.2002). The court said that a probable cause petition was akin to an arrest warrant, where the officer must present a written affidavit or sworn complaint which demonstrates probable cause, citing Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).[6]
The court explained that when an unsworn petition is filed pursuant to the Act and the respondent continues to be held past his release date, a fundamental liberty[7] interest is violated. On the other hand, detention prior to the respondent's release date is merely concurrent to the sentence for which the respondent is already incarcerated, and does not offend due process. Stated another way, due process does not require sworn proof unless it represents the difference between freedom and confinement, as it did in Kephart. See Justice Cantero's specially concurring opinion.
The Kephart opinion also disapproves of the cure period imposed by the fourth district, in its review of the case. Instead the court required that where an unsworn petition is filed on the respondent's release date, the circuit court must hold the adversarial probable cause hearing delineated in section 394.915(2)-(3)[8] within twenty-four hours from the filing of the probable cause petition. Kephart.
As our supreme court noted in Kephart, section 394.915(2) was "apparently intended by the Legislature to be a fallback procedure for persons who were entitled to be released from prison but still had not been brought to trial under the commitment petition." All the supreme court did in Kephart was provide for the immediate *748 enforcement of the adversarial probable cause hearing. We think the supreme court did so because the respondent had not received timely notice of his continued detention under the Act, which was his right under the due process clause.
We reject Golden's de facto argument that Kephart should be applied broadly. Rather, we hold that the requirement for a section 394.915(2) hearing within twenty-four hours should be narrowly applied. Under the facts of this case, and virtually all cases, a broad interpretation of that requirement would lead to an unjust and unintended result.
If this court accepted Golden's argument, only two outcomes would be possible. The first potential outcome is that the state attorney would always have to file a sworn petition. The Act does not require the petition to be sworn, and we decline to read such a provision into it.
The second potential outcome of Golden's argument is that if the state attorney does not file a sworn petition, and if the commitment hearing is not held prior to the respondent's release date, a respondent who is otherwise appropriate for commitment under the Act, must be released before the commitment issue can be decided. We do not believe that either the Legislature or the supreme court intended this result because it would tend to thwart the purpose of the Act.[9]
Instead, we read Kephart to merely impose a section 394.915(2) hearing requirement within twenty-four hours when an unsworn petition has been filed on the respondent's release date, because the respondent has failed to receive timely notice under the due process clause. Where, as here, the petition is filed while the respondent is incarcerated as a result of convictions for sexually violent offenses, in virtually all instances, a respondent will have received timely notice of the civil commitment, and the due process clause will not be offended by the filing.
The language of section 394.915(2) does not require the state attorney to move for, or the circuit court to order, sua sponte, such a hearing. The silence of the Act regarding the state attorney and the court leaves us to conclude that the responsibility to raise a due process or liberty issue and request a section 394.915(2) hearing has been left to the respondent.
Golden had a month's notice in this case, which we deem to be timely under the due process clause. In addition, he had the opportunity to move for a section 394.915(2) adversarial probable cause hearing to test whether probable cause existed to continue to detain him, but he did not do so even though it was incumbent upon him to seek this remedy. Instead, he filed a motion to vacate the probable cause order, seeking his release. There is nothing in the Act that permits this type of "short-cut" without an adversarial probable cause determination as outlined in section 394.915(2). Further, the Act is subject to scrupulous compliance, Kephart. Where one fails to avail himself of this remedy, the result is a waiver.
AFFIRMED.
SAWAYA and TORPY, JJ., concur.
NOTES
[1] See Hale v. State, 891 So.2d 517 (Fla. 2004)(competent substantial evidence must support jury verdict in Ryce Act case); Houtsma v. State, 828 So.2d 1035 (Fla. 1st DCA 2002).
[2] See section 394.915, Determination of probable cause; hearing; evaluation . . .:

(1) When the state attorney files a petition seeking to have a person declared a sexually violent predator, the judge shall determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator. If the judge determines that there is probable cause to believe that the person is a sexually violent predator, the judge shall order that the person remain in custody and be immediately transferred to an appropriate secure facility if the person's incarcerative sentence expires.
[3] As noted in Justice Cantero's concurring opinion, this may well be because, if the state meets the specific deadlines in the Act for the steps which lead to civil commitment, there would be more than sufficient time for the petition and the trial to be held prior to the respondent's release date. In that case, no Fourth Amendment violation would occur because a prisoner would not be held past his release date. Thus the petition need not be sworn.
[4] See section 92.525(2), which authorizes verification in certain instances.
[5] See U.S. Const. amends. V, XIV; Art. I, § 9, Fla. Const.
[6] However, the supreme court disagreed with the fourth district that sworn proof in the form of an affidavit, live testimony, or proof by at least one mental health expert, had to be provided. Instead, the court noted that such a rule failed to consider that the Act delegates the responsibility for filing a probable cause petition with the state attorney pursuant to section 394.913, and concluded that because the Legislature gave the state attorney this responsibility, the state attorney could swear to the facts in the petition.
[7] See U.S. Const. amends. V, XIV; Art. I, §§ 12, 23, Fla. Const.
[8] § 394.915, Determination of probable cause, provides in part:

(2) Upon the expiration of the incarcerative sentence and before the release from custody of a person whom the multidisciplinary team recommends for civil commitment, but after the state attorney files a petition under s. 394.914, the court may conduct an adversarial probable cause hearing if it determines such hearing is necessary. The court shall only consider whether to have an adversarial probable cause hearing in cases where the failure to begin a trial is not the result of any delay caused by the respondent. The person shall be provided with notice of, and an opportunity to appear in person at, an adversarial hearing. At this hearing, the judge shall:
(a) Receive evidence and hear argument from the person and the state attorney; and
(b) Determine whether probable cause exists to believe that the person is a sexually violent predator.
[9] See § 394.910 "Legislative findings and intent."