820 So.2d 994 (2002)
Kevin DILLARD, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-3744.
District Court of Appeal of Florida, Fourth District.
June 19, 2002.
Kevin Dillard, Arcadia, pro se.
Robert A. Butterworth, Attorney General, Tallahassee, and Claudine M. LaFrance, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
We reverse an order denying post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.800. Dillard was convicted of attempted trafficking in cocaine in an amount between 28 and 200 grams pursuant to sections 777.04 and 893.135, Florida Statutes (1997). He was *995 sentenced, in 1998, as a habitual felony offender to twenty years in prison. Appellant asserts that his habitual offender sentence is unlawful and that he could only be sentenced within the sentencing guidelines.
Decisions from the First and Fifth Districts have recognized, and the state acknowledges on appeal, that if Dillard had been convicted of a completed trafficking offense, rather than an attempt, he would have received a guideline sentence under the trafficking statute in effect at the time and could, therefore, not have been sentenced as a habitual offender.[1]See Bryant v. State, 760 So.2d 1034 (Fla. 5th DCA 2000)(holding the statute places the lesser trafficking offenses under the guidelines and removes them from sentencing under the habitual offender statute); Clay v. State, 750 So.2d 153, 154 (Fla. 1st DCA 2000)("The habitual offender sentence imposed on Clay is an illegal sentence because section 893.135(1)(b)1.a. [1997] expressly mandates that persons guilty of trafficking in cocaine, where the quantity involved is 28 grams or more, but less than 200 grams, `shall be sentenced pursuant to the sentencing guidelines ....'"); see also Wright v. State, 743 So.2d 103 (Fla. 1st DCA 1999).
Under the attempt statute, if the offense attempted is a first-degree felony (trafficking in cocaine is a first-degree felony), then the attempt to commit that crime is a second-degree felony punishable as provided in section 775.082 (penalties), 775.083 (fines), or 775.084 (habitual offender sentencing). The state submits, applying language used in Suarez v. State, 635 So.2d 154 (Fla. 2d DCA 1994), that if Dillard had trafficked in the cocaine, he would have committed a first-degree felony, he could not have been habitualized, and he would have been sentenced under the guidelines. Yet, as the conviction is for the second-degree attempt felony, it is punishable under a lesser guidelines range or as a habitual offender.
The state argues, by analogy, that the legislature specifically excluded conspiring to traffic in cocaine from the attempt statute. See §§ 777.04(c), 893.135(5), Fla. Stat. (1997). Attempted conspiracy to traffic does not exist. Instead, the legislature determined that attempting to conspire is the same as conspiring to traffic in cocaine, a first-degree felony. The state reasons that because the legislature did not treat attempted trafficking the same way it treated attempted conspiracy to traffic (leaving it as a second-degree felony for which a lesser sentence is imposed), habitualization remained a punishment option for this crime. Thus, the state asserts that the legislature necessarily intended to subject anyone who attempted a drug trafficking crime to punishment as a habitual offender under section 777.04(4)(b).
We deem Suarez inapposite where, in that case, the appellant was sentenced under the guidelines after the district court held on the merits that the trial court could not impose a minimum mandatory sentence for the attempt. Id. at 154. Although subsequent decisions clarified that habitual offender sentencing is unavailable for the offense of trafficking in cocaine under the applicable statute, no court has yet to decide whether Florida's attempt *996 statute permits habitualization for an attempt where the trafficking statute requires a guidelines sentence.[2]
To accept the state's reasoning is to accept an anomaly that a defendant who commits a lesser attempt offense can be sentenced as a habitual offender, while a defendant committing a completed trafficking offense on the same facts is not subject to habitual offender penalties. There is no rational basis to interpret the statute to lead to the absurd result that a defendant may be sentenced to a more severe sentence for an attempt to commit trafficking than for actually committing the offense. Such a result is beyond, and inconsistent with, the sentencing scheme under the attempt statute.
The supreme court has reached a similar result when faced with a comparable anomaly, where punishment for the attempt to commit an act was more severe than punishment for the completed act. In State v. Iacovone, 660 So.2d 1371 (Fla. 1995), the defendant was convicted of attempted third-degree murder of a law enforcement officer and sentenced to thirty years' imprisonment with a 25 year mandatory minimum term. The supreme court reversed, holding that the sentencing provisions of attempted murder of a law enforcement officer statute applied only to first-degree murder of a law enforcement officer. Id. at 1374.
Under the sentencing scheme addressed in that opinion, murder of a law enforcement officer was punishable as follows:
First-degree murder ... death or life without parole
Second-degree murder ... imprisonment not exceeding 30 years, with a 25 year mandatory minimum term
Third-degree murder ... imprisonment not exceeding 15 years, with a 15 year mandatory minimum term
Id. at 1372 (citing §§ 775.082, 775.0823, 782.04, Fla. Stat. (1991)). Section 784.07 addressed attempted murder of a law enforcement officer, making the crime a life felony punishable by life or less than forty years imprisonment with a 25-year mandatory minimum term. Id. at 1373 (citing §§ 784.07(3), 775.0825, Fla. Stat. (1991)).
The discrepancy recognized in Iacovone was that the penalty for attempted third-degree murder of a law enforcement officer (i.e., life or forty years with a twenty-five year mandatory minimum) was greater than the penalty for completed third-degree murder of a law enforcement officer (i.e., fifteen years with a fifteen year mandatory minimum). Furthermore, the penalty for attempted second-degree murder of a law enforcement officer (i.e., life or forty years with a twenty-five year mandatory minimum) was greater than the penalty for completed second-degree murder of a law enforcement officer (i.e., thirty years with a twenty-five year mandatory minimum). The court reasoned, applying standard rules of construction:
"it is our primary duty to give effect to the legislative intent; and if a literal interpretation leads to an unreasonable result, plainly at variance with the purpose of the legislation as a whole, we must examine the matter further." (citation omitted) Statutes, as a rule, "will not be interpreted so as to yield an absurd result." (citation omitted)
* * *
... If the purpose of the statutes is to discourage lethal attacks against law enforcement officers, as the State contends, then the penalty for the completed crime should be greater, not less, *997 than the penalty for the attempt. Otherwise, a criminal who attempts to murder a law enforcement officer would have a substantial incentive to complete the act in order to avoid exposure to the harsher penalty. The State's interpretation thus would seem to encourage, not discourage, lethal attacks. This is an irrational result.
Id. at 1373 (emphasis supplied in original).
The supreme court concluded that the more rational result, and the result that would give effect to legislative intent, would be to apply the sentencing provisions of attempted murder of a law enforcement officer only to first-degree murder. Id. at 1373-74. Under that construction, the logical arrangement of penalizing the completed act more harshly than the attempt would be achieved.
Although Iacovone may be distinguishable from this case in that there, the court was faced with an apparent discrepancy between the sentencing statutes, the rationale of that opinion applies here. As in Iacovone, we interpret the sentencing statutes so as not to reach an absurd result that would provide incentive to criminals to complete the act of trafficking so as to avoid the harsher penalty for attempt. This literal interpretation would lead to an unreasonable result, plainly at variance with the purpose of the legislation as a whole. If the purpose of the legislation is to discourage trafficking, then the penalty for the completed crime must be intended to be greater, not less, than the penalty for the attempt. Otherwise, a criminal, who might be subject to sentencing as a habitual felony offender, would be encouraged to complete the crime of trafficking so as to avoid exposure to the harsher penalty permitted for attempt. A comparable result was held to be unreasonable in Iacovone and is just as unreasonable here.
Therefore, we reverse the sentence and remand for re-sentencing consistent with this opinion.
WARNER and SHAHOOD, JJ., concur.
NOTES
[1] The prior statute for trafficking in less than 200 grams provided that if the quantity involved "is 28 grams or more, but less than 200 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of 3 calendar years...." § 893.135, Fla. Stat. (1991).

The language was amended by Laws of Florida, ch. 93-406 Section 24, effective January 1, 1994, and was applicable to sentencing for offenses committed on or after that date. The mandatory minimum language has since been restored and the statute now reads as it did before the change in 1993.
[2] We need not address whether we agree that the trafficking statute necessarily precluded habitual offender sentencing, as that is not in issue here.