988 So.2d 1170 (2008)
Marvin A. BARBER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-3518.
District Court of Appeal of Florida, Fourth District.
August 6, 2008.
Rehearing Denied September 12, 2008.
Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Sue-Ellen Kenny, Assistant Attorney General, West Palm Beach, for appellee.
*1171 TRAWICK, DARYL EVAN, Associate Judge.
The Appellant, Marvin Barber, has two convictions for sexual batteryone for an offense committed in February 1980, and the other for an offense committed in July 1990. Barber's 1990 conviction resulted in a fifteen-year prison sentence. Sometime between 1996 and 1998, Barber was released from prison and placed on conditional release by the Florida Parole Commission. Barber continued in this status until 2000, when he was returned to prison after the Parole Commission determined that he had violated the terms of his conditional release by testing positive for drugs and failing to abide by his curfew. In January 2006, the State filed a petition seeking to have Barber civilly committed under the Jimmy Ryce Act. Ultimately, Barber was found to be a sexually violent predator and committed to the custody of the Department of Children and Family Services. In this appeal, Barber argues that the trial court lacked the authority to order such commitment because he was neither in custody on the effective date of the act, January 1, 1999, or sentenced to "total confinement" after that date. We reject Barber's argument and affirm the order appealed.
The Jimmy Ryce Involuntary Civil Commitment for Sexually Violent Predator's Treatment and Care Act (the "Act") became effective on January 1, 1999. See Ch. 98-64, § 24, at 455, Laws of Fla.; §§ 916.31-.49, Fla. Stat. (Supp.1998). The Act has since been renumbered and now appears in Florida Statutes Chapter 394, Part V, "Involuntary Civil Commitment of Sexually Violent Predators" (2006). At all times relevant to the instant appeal, section 394.925, the so-called "jurisdictional" section of the Act, provided as follows:
This part [part V or chapter 394 governing the involuntary civil commitment of sexually violent predators] applies to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in § 394.912(9), as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future.
§ 394.925, Fla. Stat. (2008).
There are thus two classes of persons subject to involuntary commitment as provided for in the Act: (1) those who have been convicted of a sexually violent offense and who were "in custody" on January 1, 1999 (Clause One) and (2) those who have been convicted of a sexually violent offense and who are "sentenced to total confinement [[1]] in the future [post January 1, 1999]" (Clause Two). See § 394.925, Fla. Stat.; Ward v. State, 986 So.2d 479, 481 (Fla.2008) (answering certified question in the affirmative).
Barber contends that he does not fall within either class of persons defined by section 394.925. Barber believes that he does not fall within Clause One because on January 1, 1999, he was on conditional release and not in a "physically secure facility." He also maintains that he does not fall within Clause Two because the revocation of his conditional release did *1172 not constitute a "sentence to total confinement in the future" within the meaning of the Act.
In determining whether the facts before us fall within the ambit of Clause One, we must answer this question: Are the terms "in custody" and "total confinement," as used in separate clauses of section 394.925, synonymous in the context of a person on conditional release? Barber, and the dissent, concludes that they are, citing State v. Siddal, 772 So.2d 555 (Fla.3d DCA 2000), and Gordon v. Regier, 839 So.2d 715 (Fla. 2d DCA 2003), disagreed with on other grounds in Larimore v. State, 917 So.2d 354 (Fla. 1st DCA 2005), review granted in 935 So.2d 1220 (Fla. 2006). In reaching this conclusion, these cases rely on a "plain and ordinary meaning" analysis of the term "in custody." While such an analysis is normally warranted, the use of different terms in different clauses of the same statutory provision"in custody" in Clause One, and "total confinement" in Clause Twocreates an inherent ambiguity requiring the court to look beyond the plain and ordinary meaning of the term "in custody." Further, even if this language could be construed to be unambiguous, the plain meaning analysis should not be used when to do so would clearly defeat the intent of the legislature. "`It is a fundamental rule of statutory construction that legislative intent is the polestar by which the court must be guided, and this intent must be given effect even though it may contradict the strict letter of the statute.'" Knowles v. Beverly Enters.-Fla., Inc., 898 So.2d 1, 6 (Fla.2004) (quoting State v. Webb, 398 So.2d 820, 824 (Fla.1981)) (emphasis added).[2] None of the above-cited authorities dispel the concern that legislative intent would be preempted by the interpretation Barber and the dissent urge we afford the term "in custody."
In considering the legislature's use of the term "in custody" in Clause One and "total confinement" in Clause Two, we should be mindful of the maxim of statutory interpretation that where certain language is used in one part of a statute and different language is used in another, it will be assumed that different meanings were intended. Norman J. Singer, Statutes & Statutory Construction § 46:06, at 194 (6th ed. 2000).[3] Additionally, absent evidence of a contrary conclusion, legal terms in a statute will be presumed to have been used in their legal sense. Id. § 47:30 at 361-62.
A careful reading of the cases relied on by Barber and the dissent reveal no discussion or analysis of the significance of the legislature's use of the terms "in custody" in Clause One and "total confinement" *1173 in Clause Two. These cases instead rely on the "plain and ordinary meaning" of the term "in custody," and, by the use of a dictionary, they conclude that "in custody" and "total confinement" are synonymous. See Siddal, 772 So.2d at 556; Gordon, 839 So.2d at 718. Such a conclusion dismisses without discussion the ambiguity created by the use of these terms in difference clauses of the same provision. It also ignores the presumption that the legislature intended different meanings by its use of different terminology in the two clauses of section 394.925. The use of the undefined term "in custody" by the legislature in this context cloaks it with legal significance that cannot be ignored. As the Gordon court stated, "[i]n the legal arena, the term `custody' is a term of art...." Id. at 718.[4] Thus, we cannot casually dismiss the possibility that the legislature intended that this term encompass more than its colloquial meaning.[5]
In Echols v. State, 201 So.2d 89 (Fla. 2d DCA 1967), the Second District Court of Appeal discussed the legal status of a paroled, or conditionally released, prisoner. Our sister court found that while such a prisoner was not in actual custody, the prisoner remained in "legal" or "constructive custody." Id. at 93-94 (citing 67 C.J.S. Pardons § 22(b), p. 610). This concept, in the context of persons on parole, is well established in our jurisprudence. See United States v. Presley, 487 F.3d 1346, 1349 (11th Cir.), cert. denied, ___ U.S. ___ 128 S.Ct. 414, 169 L.Ed.2d 290 (2007); see also Sherman v. United States Parole Comm'n, 502 F.3d 869, 884 (9th Cir.2007); United States v. Brown, 117 F.3d 471, 475 (11th Cir.1997); Howse v. Tenn. Dep't of Correction, No. M2004-01497-COA-R3CV, 2007 WL 2198188 (Tenn.Ct.App. July 23, 2007); Jenner v. Ortiz, 155 P.3d 563, 565 (Colo.Ct.App. 2006), cert. denied, ___ U.S. ___, 127 S.Ct. 2976, 168 L.Ed.2d 708 (2007). Thus, the term "in custody" can be interpreted to mean both actual and constructive custody. Such an interpretation would comport with the assumption that the legislature intended different meanings in using different terminology in Clause One and Clause Two, as well as the presumption that the legislature understood the full meaning and implication of the language it used. See Ward v. State, 936 So.2d 1143, 1146 (Fla. 3d DCA 2006), aff'd, 986 So.2d 479 (Fla.2008).
How then can it be presumed that the legislature intended the term "in custody" to include "constructive" custody? A contrary conclusion would create a serious anomaly within the Jimmy Ryce Act. If a person was on probation on the effective date of the Act, and that person was later found to have violated his probation, resulting *1174 in a sentence of "total confinement" by a court, that individual may be subject to civil commitment under Clause Two. However, a person who was on conditional release on the effective date of the Act, as Barber was here, and was later found to have violated his release conditions, would not likewise be subject to commitment under the Act. Since the offender would already have been sentenced to a prison term prior to the effective date of the Act, a decision by the Parole Commission to return the offender to custody to complete a sentence may not constitute a sentence of "total confinement in the future." Thus, persons conditionally released from prison terms and who later violate their release conditions would be treated in a more lenient manner under the Act than persons who violate conditions of their probationary sentences. Yet, a person originally sentenced to probation can, in most circumstances, be presumed to be a less serious offender than a person originally sentenced to prison and on conditional release. Absent a departure sentence, only less serious offenders would be eligible for probation under Florida's Sentencing Guidelines, Florida Statutes section 921.001, et. seq. See also Duncan v. Moore, 754 So.2d 708, 712 (Fla.2000) (due to prior criminal history, conditional release upon release from prison justified).
It is a basic tenet of statutory construction that a court must interpret a statute in a manner that would avoid an absurd result. See Smith v. Krosschell, 937 So.2d 658, 663 (Fla.2006); V.K.E. v. State, 934 So.2d 1276, 1289 (Fla.2006) (Cantero, J., dissenting); Warner v. City of Boca Raton, 887 So.2d 1023, 1033 n. 9 (Fla.2004); State v. Atkinson, 831 So.2d 172, 174 (Fla.2002); Ross v. State, 947 So.2d 699, 701 (Fla. 4th DCA 2007); Velde v. Velde, 867 So.2d 501, 507 (Fla. 4th DCA 2004); DR Lakes Inc. v. Brandsmart U.S.A. of W. Palm Beach, 819 So.2d 971, 974 (Fla. 4th DCA 2002); Dillard v. State, 820 So.2d 994, 996-97 (Fla. 4th DCA 2002); City of Margate v. Singh, 778 So.2d 1080, 1081 (Fla. 4th DCA 2001). A broad interpretation of the term "in custody," as used in the Act, would avoid such a result and support the clear legislative intent to protect the public. See State v. Robinson, 873 So.2d 1205, 1210 (Fla.2004); Ward, 936 So.2d at 1149 (the purpose of the Act is to provide mental health treatment and protect the public from sexually violent predators) (citing Westerheide v. State, 831 So.2d 93, 112 (Fla.2002)). Indeed, the supreme court's discussion of the purpose of the Act in Ward supports such a broad interpretation:
[T]here is no rational basis to classify potential sexually violent predators differently based on whether they were incarcerated on the effective date of the Act. The purpose of the Act is to remove the threat posed to society by sexually violent predators by means of involuntarily committing them to long-term care and treatment facilities. This purpose is served equally when the Act is applied to those individuals who were in custody on its effective date and who had been convicted of a sexually violent offense in the past, see Hale, and when the Act is applied to those individuals who were not in custody on the effective date but have also been convicted of a sexually violent offense in the past. Classification as a sexually violent predator does not rest on the vagaries of whether an individual was in custody on the date the Act became effective.

986 So.2d at 483 (emphasis added).
If the legislative intent is to protect the public, it becomes quite logical and reasonable to conclude that the legislature, while intending that less serious offenders who are on probation be included under *1175 the Act, did not intend that the more serious offenders on conditional release be excluded.[6] As a result, the term "in custody," as used in Clause One of the Jimmy Ryce Act, must be interpreted to include persons in both actual and constructive custody in the context of conditional release.[7] Thus, Barber falls within the ambit of this clause.
A thorough analysis of the cases primarily relied on by the dissent, namely Siddal and Gordon, supports the conclusion that they are not dispositive of the issue before us. In Siddal, the appellee was on probation on the effective date of the Jimmy Ryce Act. The State argued that the term "in custody" should include persons on probation. The Third District Court of Appeal rejected that argument, utilizing a plain meaning analysis and relying on a dictionary definition of the term. The court thus affirmed the trial court's finding that Clause One did not apply to persons on probation on the Act's effective date.[8] Unlike Siddal, the case before us involves conditional release and constructive custody. To extend the Siddal holding under the circumstances presented here would, as discussed earlier, ignore the significant differences between probation and conditional release.
Despite such differences, Gordon extended Siddal to a conditional release circumstance. The petitioner, who had been convicted of a lewd and lascivious act in the presence of a child under the age of sixteen, was sentenced to fifteen years in prison in 1992. He was released from prison on conditional release in 1998. He was found to have violated his release conditions and was returned to custody.[9] On April 6, 2000, the petitioner was reinstated to conditional release by the Florida Parole Commission and released from custody. After this second release, the Department of Corrections determined that the petitioner might be subject to the Jimmy Ryce Act and issued a warrant for his arrest. He was arrested two days after the second release date. The issue presented to the Second District Court of Appeal was whether the Act applied to a person who was not in custody at the time a petition for involuntary commitment was filed. The court answered this question in the negative. The court placed great reliance on the accomplishment of certain procedural prerequisites under the Act "while the person [is] still in prison." Gordon, 839 So.2d at 718.[10] In other words, the procedural review process must be accomplished prior to the completion of *1176 a person's sentence and while the individual is still incarcerated.[11]Gordon found that since these prerequisites could only be accomplished in a total confinement setting, i.e., prison, "in custody," as used in Clause One, must necessarily equate to "total confinement." The court noted approvingly Siddal's reliance on a dictionary definition of "custody" in reaching this conclusion, id. at 718, and extended the custody analysis of Siddal, made in the context of a probationary sentence, to a custodial release circumstance.
While it is true that civil commitment prerequisites cannot take place unless a defendant is in total confinement, the Gordon court's blanket extension of Siddal to custodial release circumstances is unwarranted. The key point in the Gordon analysis was the fact that the petitioner was not incarcerated at the time the Act's procedural prerequisites were commenced. "[T]he Legislature intended that ordinarily the review process of potential sexual predators would be concluded while the person was still in prison." Id. at 718 (emphasis added). Thus, Gordon found that a person on conditional release cannot be civilly committed under the Jimmy Ryce Act since that person is not in total confinement. The question of whether the petitioner was incarcerated or in "actual custody" on the Act's enactment date was not addressed by the Gordon. court.[12] Yet the dissent here relies on Gordon in concluding that the Act does not apply unless an individual is in actual custody, i.e., total confinement, on the Act's enactment date, regardless of whether the individual is in actual custody when civil proceedings are commenced. This would be an unwarranted extension of the overbroad language in Gordon and would clearly be contrary to the intent of the Legislature. Instead, we interpret Gordon as being limited to those circumstances in which an individual is not in actual confinement, i.e., total confinement, when civil commitment proceedings are commenced, regardless of whether the individual was in actual or constructive custody on the Act's enactment date. Not only would this interpretation comport with the intent of the legislature, it would be in line with the conclusion of the supreme court in Ward, quoted above, that the determination of whether a person is a sexual predator under the Act should not "rest on the vagaries of whether an individual was in custody on the date the Act became effective." Ward, 986 So.2d at 483.
Our analysis of the term "in custody" would not be complete without considering the full impact of Ward, even though it was a Clause Two decision.[13] Ward was convicted of two sexually violent offenses in 1976, and he was released from prison in 1993. He was later convicted for non-sexually related offenses and sentenced to thirty-six months in prison in 2004. In 2005, the State commenced commitment proceedings under the Act. Ward moved to dismiss the petition because he had not been in custody on the effective date of the Act and he had not been convicted of a *1177 sexually violent offense after that date. The trial court denied his motion, and Ward filed for a writ of prohibition with the Third District Court of Appeal. The Third District, in analyzing Clause Two, found that the Act applied to persons in "total confinement" even if the reason for such confinement was not a sexually related offense. Ward, 936 So.2d at 1145.[14] The supreme court agreed with this conclusion, rejecting the petitioner's argument that both the qualifying offense and total confinement requirements of Clause Two must occur "in the future"after the effective date of the Act. In reaching its decision, the court relied in part on its holding in Hale v. State, 891 So.2d 517 (Fla.2004). Hale, important to our analysis here, involved an interpretation of Clause One of section 394.925 of the Act prior to the May 1999 amendment.[15] The petitioner argued that when the State filed its civil commitment petition, he was not in custody for a sexually violent offense. The Hale court found that "the Act applies to all persons who are currently incarcerated and who at some point in the past have been convicted of a sexually violent offense." Id. at 522.[16] The Hale court reasoned that this interpretation "`give[s] effect to all statutory provisions ... in harmony with one another.'" Id. (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992)). The Ward court, in its discussion of Hale, noted that Hale involved Clause One and the pre-May 1999 version of the Act. However, Ward applied Hale's reasoning to Clause Two, finding that the Act's scope includes persons who committed a sexually violent offense in the past, regardless of what the offense was they were being incarcerated for when a commitment petition was filed. Ward, 986 So.2d at 481-83.[17]
Ward, despite the Third District's conclusion that "total confinement" and "in custody" are interchangeable, is not dispositive of the issue presented here, since, *1178 as we noted earlier, the issue before the Ward court involved Clause Two and not Clause One. Additionally, Hale, the reasoning of which was relied upon by Ward, was decided prior to the amendment of the jurisdictional provision of the Act, which added the term "total confinement" to Clause Two. This amendment substantively changed the interpretation of the term "in custody" by creating two separate groups of personsan undefined group which must be "in custody" and a specifically defined group which must be in "total confinement." The ambiguity created by the use of these terms and the intent of the legislature in creating these separate groups, until now, has never been fully addressed.
As each of the cases discussed above is distinguishable on its facts from the subject case, they do not bar the interpretation of the term "in custody" reached here. We therefore conclude that Barber does fall within the scope of Clause One of the Act, and that the trial court was correct in finding that Barber was subject to involuntary commitment. Given this conclusion, we need not reach Barber's arguments regarding the inapplicability of Clause Two.
Affirmed.
STONE, J., concurs.
STEVENSON, J., dissents with opinion.
STEVENSON, J., dissenting.
I must respectfully dissent. Because appellant was out of prison on conditional release he was not "in custody" on the effective date of the Jimmy Ryce Act (the Ryce Act) and because appellant was later returned to prison by the Parole Commission for a conditional release violation he was not "sentenced" to confinement after the effective date of the Ryce Act. Thus, I would reverse and hold that the trial court had no authority to civilly commit appellant under the Ryce Act.
A person is subject to civil commitment proceedings under the Ryce Act if he has been convicted of a sexually violent offense and was "in custody" on the effective date of the Ryce Act, January 1, 1999. See § 394.925, Fla. Stat. (2008) (so-called clause one). During the course of this appeal, and below, both appellant and the State have correctly agreed that clause one of the jurisdictional provisions of the Ryce Act is not applicable because appellant was on conditional release on the effective date of the Ryce Act. This position is supported both directly and indirectly by at least two other districts. See State v. Siddal, 772 So.2d 555 (Fla. 3d DCA 2000) (finding that petitioner on probation on January 1, 1999, was not "in custody" for purposes of the Ryce Act); Gordon v. Regier, 839 So.2d 715, 718 (Fla. 2d DCA 2003), disagreed with on other grounds in Larimore v. State, 917 So.2d 354 (Fla. 1st DCA 2005) (concluding that petitioner on conditional release on January 1, 1999, was not "in custody"), review granted in 935 So.2d 1220 (Fla.2006).
I have no quarrel with the concept of "constructive custody" addressed in the majority opinion and discussed in Echols v. State, 201 So.2d 89, 93 (Fla. 2d DCA 1967) ("`[A] a paroled prisoner, although conditionally released from actual custody, remains in legal custody and is constructively a prisoner of the state or nation, as the case may be.'") (quoting 67 C.J.S. Pardons § 22(b), p. 610). I also acknowledge that a person freed from prison on conditional release remains under a degree of supervision by the state. I simply do not agree that the legislature intended to include the legal fiction of "constructive custody" when it used the term "in custody" in section 394.925 of the Ryce Act. As a well-accepted principle of statutory interpretation, *1179 where the legislature has not defined words or phrases used in a statute, they should be "construed in the plain and ordinary sense." Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So.2d 1216, 1225 (Fla.2006). I believe that if the legislature had intended such an expansive and hyper-technical meaning for the term "in custody," it would have explicitly said so. As the court in State v. Siddal remarked, "especially considering the serious consequences of the statutory section at issue, the liberal reading of the term advocated by the state is not supported by the terminology employed or the section's legislative history." 772 So.2d at 556. Neither the common meaning nor the general legal understanding of the term "in custody" conjures up the esoteric notion of "constructive custody."
Further, I do not believe that appellant was "sentenced" to total confinement after the effective date of the Ryce Act.[1] The second clause of the jurisdictional provisions of the Ryce Act applies to those who have been convicted of a sexually violent offense and "sentenced to total confinement in the future [i.e., post January 1, 1999]." § 394.925, Fla. Stat. Appellant was returned to prison post-January 1, 1999, as a consequence of the Florida Parole Commission's revocation of his conditional release. The Conditional Release Program Act is governed by Florida Statutes section 947.1405. "[C]onditional release is not a form of sentence, and it is not imposed by a court" and an inmate's "placement on conditional release is required, not by the sentencing court, but by the Parole Commission." Mayes v. Moore, 827 So.2d 967, 971 (Fla.2002). As explained in Evans v. Singletary, 737 So.2d 505, 507 (Fla.1999):
Conditional Release is an extra post-prison probation-type program. In other words, when an inmate is released due to gain time from a sentence that is eligible for Conditional Release, instead of going free as other offenders would do (unless they have probation or some other supervision to follow), these offenders are placed on supervision for the amount of time equal to the gain time they have accrued. If they violate their supervision, gain time is forfeited and the inmate is returned to prison to continue serving the sentence(s). See § 947.1405(2), Fla. Stat. (1997).
A Parole Commission panel may revoke conditional release if it finds that the violations of conditional release have been sustained and may "return the releasee to prison to serve the sentence imposed." § 947.141(4), Fla. Stat.; see also Sutton v. Fla. Parole Comm'n, 975 So.2d 1256 (Fla. 4th DCA 2008).
According to appellant, the word "sentenced," as used in section 394.925, requires a judicial action and, thus, he is not subject to the Ryce Act since he had been "sentenced" to confinement many years prior to the Ryce Act's effective date. I am constrained to agree. The word "sentenced" is not defined in chapter 394. It is, however, defined by the Florida Rules of Criminal Procedure and its meaning is limited to a punishment handed down by a court. Rule 3.700(a) provides that "[t]he term sentence means the pronouncement by the court of the penalty imposed on a *1180 defendant for the offense of which the defendant has been adjudged guilty." The word "sentence" used as a legal term of art refers to the punishment imposed by a court. See Waite v. City of Fort Lauderdale, 681 So.2d 901, 903 n. 3 (Fla. 4th DCA 1996). "`[T]he legislature is presumed to know the existing law when a statute is enacted.'" Crescent Miami Ctr., LLC v. Fla. Dep't of Revenue, 903 So.2d 913, 918 (Fla.2005) (quoting Wood v. Fraser, 677 So.2d 15, 18 (Fla. 2d DCA 1996)). Further, the plain and ordinary meaning of the word "sentenced" also denotes the judicial act of imposing a penalty or punishment.
In revoking conditional release, the Parole Commission returns a defendant to serve the remainder of a sentence previously imposed by a judge; it does not impose a new sentence. To conclude that the Parole Commission "sentenced" appellant might well amount to a separation of powers violation.[2] Appellant was sentenced to total confinement by the court in 1990 and not by the Parole Commission when he was returned to prison post-January 1, 1999. The State claims that this interpretation creates a statutory "loophole," and treats persons returned to prison by the Parole Commission after conditional release differently than persons sentenced to prison by a judge after a probation violation; however incongruous that consequence may seem to the State, this court is not free to re-write the statute. See State v. Globe Commc'ns Corp., 622 So.2d 1066, 1080 (Fla. 4th DCA 1993) ("[I]t is a time-honored principle of Florida law that it is not the role of a court to rewrite a statute."), aff'd, 648 So.2d 110 (Fla.1994).
Accordingly, I would reverse the order committing appellant to the custody of DCF under the Ryce Act.
NOTES
[1] "Total confinement" is defined as follows:

"Total confinement" means that the person is currently being held in any physically secure facility being operated or contractually operated for the Department of Corrections, the Department of Juvenile Justice, or the Department of Children and Family Services. A person shall also be deemed to be in total confinement for applicability of provisions under this part if the person is serving an incarcerative sentence under the custody of the Department of Corrections or the Department of Juvenile Justice and is being held in any other secure facility for any reason.
§ 394.925(11), Fla. Stat.
[2] Similar conclusions have been reached in a number of cases. For example, in Tillman v. State, 934 So.2d 1263 (Fla.2006), the supreme court stated: "In construing statutes, we first consider the plain meaning of the language used. When the language is unambiguous and conveys a clear and definite meaning, that meaning controls unless it leads to a result that is either unreasonable or clearly contrary to legislative intent." Id. at 1269 (citations omitted); see also Fla. Birth-Related Neurological Injury Comp. Ass'n v. Fla. Div. of Admin. Hearings, 686 So.2d 1349, 1354 (Fla. 1997) ("Where, as here, the legislature has not defined the words used in a phrase, the language should usually be given its plain and ordinary meaning. Nevertheless, consideration must be accorded not only to the literal and usual meaning of the words, but also to their meaning and effect on the objectives and purposes of the statute's enactment.") (citation omitted).
[3] Section 394.912(11), the definitional provision of the Jimmy Ryce Act, specifically defines the term "total confinement." Custody was not defined. Had the legislature intended that the two terms be synonymous, they could have said so.
[4] While the Gordon court indicated that this "term of art" included seizures of persons and incarceration, the term includes more, as shown in Echols, infra.
[5] When the use of the presumption that the legislature intended the plain and obvious meaning of the terms it used in crafting a statute, Rinker Materials Corp. v. City of N. Miami, 286 So.2d 552, 553 (Fla.1973), would clearly thwart the intent of the legislature, the presumption should give way to the presumption that a term is being used in its full legal sense so as to effectuate the legislative intent, particularly in the realm of public safety. See Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc., 948 So.2d 599, 606 (Fla.2006) ("`Statutes are construed to effectuate the intent of the legislature in light of public policy.'") (quoting White v. Pepsico, Inc., 568 So.2d 886, 889 (Fla. 1999)); Williams v. State, 492 So.2d 1051, 1054 (Fla. 1986) (the supreme court refused to give a literal interpretation to the wording of a statute when to do so would be to the detriment of public policy and clearly lead to an absurd result, but instead looked to legislative intent), receded from on other grounds in Brown v. State, 719 So.2d 882 (Fla. 1998).
[6] The dissent believes that the conclusion reached here would amount to rewriting the statute. This position is refuted in the analysis above. (See Footnotes 2, 3 and 5).
[7] The dissent opines that if the legislature had intended that constructive custody be included within the meaning of "in custody," they would have said so. However it may just as logically be concluded that the converse is true. See Footnote 3 above.
[8] The First District Court of Appeal in Larimore v. State, 917 So.2d 354, 355 (Fla. 1st DCA 2005), review granted, 935 So.2d 1220 (Fla.2006), cited by the dissent, reached the same conclusion in the context of probation.
[9] Strikingly, the Gordon court did not indicate when the petitioner was returned to custody or whether he was in custody on the effective date of the Act.
[10] Gordon indicated that, in considering the Act as a whole, various procedural requirements must be accomplished while the offender is in total confinement. These include a written report and recommendation from a multidisciplinary DCF team to the state attorney as to whether the offender should be civilly committed under the Act; the filing of a civil commitment petition by the state attorney with the circuit court; and a determination by the court that there is probable cause to believe that the offender is a sexually violent predator.
[11] This requirement was likewise recognized by our supreme court in State v. Goode, 830 So.2d 817, 825 (Fla.2002).
[12] Gordon did not specifically address the situation presented here-an individual who was on conditional release on the Act's enactment date, subsequently violated his release conditions, and who was returned to prison to complete a sentence, after which, while incarcerated, proceedings under the Act were commenced.
[13] Ward was distinguished by Barber in his brief, where he concluded that the Third District's opinion was inapplicable to the case at bar, stating "its reasoning does not apply to one who is imprisoned as a result of a conditional release violation." App Br. at p. 11.
[14] The Third District in Ward noted the Gordon court's finding that the terms "total confinement" and "in custody" were "co-extensive," despite the fact that the legislature had used different terminology in the two clauses. Id. at 1145. Likewise, our court noted this same issue in Johnson v. State, 971 So.2d 212, 215 (Fla. 4th DCA 2008). This issue and the interpretation of Clause One were not determinative in Ward or Johnson. The issue before us in Johnson was whether the appellant should have been allowed to withdraw his plea because of the misadvice of his attorney regarding the effect of the plea under the Jimmy Ryce Actspecifically Clause Two of section 394.925. The holding in Gordon and the reasoning behind it were not subjected to any scrutiny in either Johnson or Ward.
[15] Prior to the amendment, the jurisdictional provision of the Act, codified at section 916.45, included within its scope "all persons currently in custody who have been convicted of a sexually violent offense ... as well as to all persons convicted of a sexually violent offense in the future." The amendment, which codified the jurisdictional provision at section 394.925, made no change to Clause One, but changed Clause Two to read that it applied "to all persons convicted of a sexually violent offense and sentenced to total confinement in the future."
[16] This conclusion was reached in that part of the opinion which was subtitled "The Meaning of `Custody' for Purposes of the Ryce Act." Hale, 891 So.2d at 520.
[17] This court in Tabor v. State, 864 So.2d 1171 (Fla. 4th DCA 2004), reached the same conclusion. The Tabor court also used the terms "in custody" and "incarceration" interchangeably. Indeed, the court framed its issue as "whether, in order for the Ryce Act to apply, the current incarceration must be for a sexually violent crime." Id. at 1173. Tabor, however, is factually distinguishable from the case at bar, as the appellant in Tabor was incarcerated on the effective date of the Act. The Tabor court did not need to determine the meaning of the term "in custody" since that issue was not presented.
[1] By statutory definition, "total confinement" is a more restrictive term than "custody." In Ward v. State, 986 So.2d 479, (Fla.2008), our supreme court noted that under the Ryce Act, "total confinement means that the person is in state custody." Id. at 481 (emphasis added). Thus, the legislature's use of the term "custody" in clause one and "total confinement" in clause two has differing implications for amenability to commitment under the Ryce Act. Appellant doesn't argue that he was not in total confinement post-January 1, 1999; his claim is that he was not "sentenced" to total confinement post-January 1, 1999.
[2] See Art. II, § 3, Fla. Const. ("No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.").